IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SELECT COMFORT CORPORATION,

        Plaintiff,                  No. CIV S-11-1488 GEB GGH

    vs.

LATERAL MONOPOLY LLC,            FINDINGS AND RECOMMENDATIONS

        Defendant.

_____/

        Before the court is plaintiff's motion for default judgment.[1]  The motion was previously submitted on the record without oral argument.  Upon review of the documents in support of the motion, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

BACKGROUND[2]

        Plaintiff Select Comfort Corporation ("Select Comfort") designs, manufactures, and markets air bed products, which are available nationwide through Select Comfort's retail stores in major shopping malls, its national direct marketing operations, and its websites.

---

[1] This action is before the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28 U.S.C. § 636(b)(1).

[2] These background facts are taken from plaintiff's complaint and the Declaration of Andrew S. Hansen submitted in support of plaintiff's motion for default judgment. (Dkt. Nos. 1, 21-2, 21-3, 21-4.)

1

(Complaint, Dkt. No. 1 ["Compl."] ¶¶ 7, 13.)  According to Select Comfort, the Sleep Number beds use uniquely designed air chambers to provide a gentle cushion of support which can be adjusted to an individual's preference, comfort, and firmness.  (Compl. ¶ 7.)  Select Comfort is the owner of United States Trademark Registrations for its trademarks Sleep Number®, What's Your Sleep Number?®, and Select Comfort®.  (Compl. ¶¶ 9-10; Declaration of Andrew S. Hansen, Dkt. No. 21-2 ["Hansen Decl."] ¶¶ 2-3, Exs. A, B.)  These registrations have all achieved incontestable status, and the trademarks have been used by Select Comfort in United States commerce in connection with numerous sleep and bed/furniture-related products and services for many years.  (Compl. ¶¶ 8, 11.)  Select Comfort markets its Sleep Number® beds and related goods in the United States through extensive advertising in the media, including newspapers, magazines, direct mailings, and television commercials and infomercials.  (Compl. ¶ 14.)  Select Comfort alleges that it has developed substantial goodwill and national recognition among U.S. consumers in Select Comfort's Sleep Number® and Select Comfort® marks as a source of high-quality products and services, and that these trademarks have become two of the most widely recognized and famous trademarks in the United States bedding industry.  (Compl. ¶¶ 16-17.)

    Recently, after several years of operating one of its retail stores on the first floor of the Roseville Galleria, Select Comfort leased a different space on the second floor of the mall.  (Compl. ¶ 18.)  After Select Comfort moved, defendant Lateral Monopoly LLC dba Sleep Alternatives ("Lateral Monopoly") leased the space adjacent to Select Comfort's old location, commenced operations under the name Sleep Alternatives, and began selling adjustable air beds made by Comfortaire, a Select Comfort competitor.  (Compl. ¶ 19.)  Select Comfort alleges that to the ordinary consumer, the Comfortaire beds sold by Lateral Monopoly are substantially similar to the Sleep Number® beds sold by Select Comfort, and the general appearance of the Sleep Alternatives store is substantially similar to that of Select Comfort's store.  (Compl. ¶ 21.)

\\\\

According to Select Comfort, Lateral Monopoly engages in unauthorized and deceptive uses of Select Comfort's trademarks, sales materials, and brochures in connection with the sale and promotion of its products. (Compl. ¶ 22, 27.) For example, Lateral Monopoly has misrepresented to consumers that it sells Sleep Number® beds. (Compl. ¶ 23.) On other occasions, Lateral Monopoly failed to correct and capitalized on consumer confusion when consumers mistakenly believed they were purchasing Sleep Number® or Select Comfort® products from Lateral Monopoly. (Compl. ¶ 24.) Additionally, Lateral Monopoly and its employees have used and shown consumers copies of Select Comfort's copyright-protected sales and pricing literature, which depicts Select Comfort's protected trademarks and trade dress, in the course of attempting to sell beds made by entities other than Select Comfort. (Compl. ¶ 25.) Furthermore, Lateral Monopoly utilized additional imitations or combinations of Select Comfort's Sleep Number® and Select Comfort® trademarks, such as the terms "number bed," "comfort number," and others. (Compl. ¶ 26.) Select Comfort alleges that Lateral Monopoly began using the above-mentioned trademarks long after Select Comfort began using the marks. (Compl. ¶ 28.)

Select Comfort contends that, because the products Lateral Monopoly sells in connection with their unauthorized use of Select Comfort's trademarks are highly related to Select Comfort's products, it is likely to deceive consumers as to the origin of Lateral Monopoly's products and the purported relationship or affiliation between Lateral Monopoly and Select Comfort. (Compl. ¶¶ 29-30.) By using the trademarks, Lateral Monopoly also unfairly receives the benefit of goodwill in Select Comfort's trademarks, dilutes the distinctive quality of the trademarks, and removes from Select Comfort the ability to control the nature and quality of the products provided under those trademarks. (Compl. ¶¶ 31-37.)

Finally, Select Comfort claims that Lateral Monopoly presents consumers with other false, deceptive, or misleading information through its retail store, including that Comfortaire was the "original air bed company" and that Comfortaire beds "are rated by

consumers independently as being the number one rated mattress overall" by citing to an unreliable ratings website. (Compl. ¶¶ 38-42.)

On June 1, 2011, Select Comfort filed the instant action against Lateral Monopoly and its managers, defendants Christopher Kelso and David Stephens, containing causes of action for: (1) federal trademark infringement; (2) federal unfair competition; (3) federal dilution of trademark; (4) federal false advertising; (5) California unfair competition; (6) California false advertising; (7) California trademark infringement; (8) California dilution of trademark; and (9) unjust enrichment. (Dkt. No. 1.)[3] A declaration of service filed with the court demonstrates that Lateral Monopoly was properly served with process on June 20, 2011 by leaving the complaint with the general manager of Lateral Monopoly's registered agent for service of process. (Dkt. No. 13; Hansen Decl. ¶ 4.)

When Lateral Monopoly failed to respond to the complaint within the required time, Select Comfort filed a request for entry of default on August 12, 2011, and served a copy of the request on Lateral Monopoly via mail. (Dkt. No. 15.) On August 15, 2011, the clerk entered Lateral Monopoly's default. (Dkt. No. 16.) Subsequently, on October 11, 2011, Select Comfort voluntarily dismissed all claims against defendants Kelso and Stephens. (Dkt. No. 20.) That same day, the instant motion for default judgment against Lateral Monopoly was filed and served on Lateral Monopoly via mail. (Dkt. No. 21.) The motion requests judgment on all claims and seeks injunctive relief, costs, and attorneys' fees. No response to the motion has been filed.

DISCUSSION

Pursuant to Fed. R. Civ. P. 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically

---

[3] This court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4

entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans., 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

   As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560.

A.      Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

1. Factor One: Possibility of Prejudice to Plaintiff

The first factor set forth by the Ninth Circuit in <u>Eitel</u> considers whether the plaintiff would suffer prejudice if default judgment is not entered, and whether such potential prejudice to the plaintiff militates in favor of granting a default judgment. <u>See</u> <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Here, Select Comfort would potentially face prejudice if the court did not enter a default judgment because Select Comfort would be without another recourse to enjoin the challenged conduct. <u>See</u> <u>Levi Strauss & Co. v. Toyo Enterprise Co., Ltd.</u>, 665 F. Supp. 2d 1084, 1095 (finding that continued infringement and dilution would prejudice plaintiff if default judgment were denied). Accordingly, the first <u>Eitel</u> factor favors the entry of default judgment.

2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The court considers the merits of Select Comfort's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. In particular, the court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. <u>See</u> <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

*First Cause of Action (Federal Trademark Infringement) and*
*Seventh Cause of Action (California Trademark Infringement)*

To prevail on a trademark infringement claim under 15 U.S.C. §§ 1114, a plaintiff must establish that, without its consent, defendant "used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertizing of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175-76.

Here, Select Comfort has sufficiently demonstrated that it owns the trademarks Sleep Number®, What's Your Sleep Number?®, and Select Comfort® used for its various

products; that those trademarks are incontestable; and that they are famous. (Compl. ¶¶ 8-17; Hansen Decl. ¶¶ 2-3, Exs. A, B.) Select Comfort has also sufficiently alleged that Lateral Monopoly used one or more of Select Comfort's trademarks or variations of them in commerce without Select Comfort's authorization. (Compl. ¶¶ 19, 21-27.) Furthermore, Select Comfort has sufficiently alleged that, because the products Lateral Monopoly sells in connection with its unauthorized use of Select Comfort's trademarks are highly related to Select Comfort's products, it is likely to confuse and deceive consumers as to the origin of Lateral Monopoly's products and the purported relationship or affiliation between Lateral Monopoly and Select Comfort. (Compl. ¶¶ 29-30.) By using the trademarks, Lateral Monopoly also unfairly receives the benefit of goodwill in Select Comfort's trademarks, dilutes the distinctive quality of the trademarks, and removes from Select Comfort the ability to control the nature and quality of the products provided under those trademarks. (Compl. ¶¶ 31-37.) Consequently, Select Comfort has been damaged in terms of resultant public confusion, lost sales, and harm to its trademarks. (Compl. ¶¶ 50-55.) Therefore, Select Comfort has established its claim for federal trademark infringement.

Because the same "likelihood of confusion" test applies to a claim for trademark infringement under California law, Select Comfort has also adequately pled that claim. See Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988).

*Second Cause of Action (Federal Unfair Competition), Fifth Cause of Action (California Unfair Competition) and Fourth Cause of Action (Federal False Advertising)*

15 U.S.C. § 1125(a) provides as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

7

>person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Select Comfort asserts a claim for federal unfair competition under 15 U.S.C. § 1125(a)(1)(A) against Lateral Monopoly based on false designation of the origin of its goods. To prevail on an unfair competition claim, a plaintiff must establish the same elements as are required to show trademark infringement: "(1) defendant must have used the protected trademark 'in commerce,' and (2) that use must be likely to confuse or misrepresent to consumers the characteristics of goods or services." Herman Miller Inc. v. Alphaville Design Inc., 2009 WL 3429739, at *6 (N.D. Cal. Oct. 22, 2009) (citing Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 631-32 (9th Cir. 2007)). For the reasons discussed above, Select Comfort has adequately alleged these elements and therefore established its federal unfair competition claim. Additionally, because the same "likelihood of confusion" test applies to unfair competition claims under California law, Select Comfort has also established that claim. See Century 21 Real Estate Corp., 846 F.2d at 1178, 1180.

Select Comfort also asserts a claim for federal false advertising under 15 U.S.C. § 1125(a)(1)(B). To prevail on such a claim, a plaintiff must show that the defendant "used [its] mark in commercial advertising or promotion to misrepresent the nature, characteristics, qualities, or geographic origin of [its] goods." PepsiCo, Inc., 238 F. Supp. 2d at 1176. Here, Select Comfort has alleged that Lateral Monopoly markets similar products and has arranged the general appearance of its store, which is located next to the old location of the Select Comfort store, to be substantially similar to Select Comfort's store. (Compl. ¶¶ 19, 21.) Lateral Monopoly is also alleged to have used Select Comfort's sales and pricing literature, as well as imitations or combinations of the Sleep Number® and Select Comfort® trademarks, when

making sales. (Compl. ¶¶ 22, 25-26.) Furthermore, Lateral Monopoly allegedly misrepresented to consumers that it sells Sleep Number® beds and/or failed to correct and capitalized on consumer confusion when consumers mistakenly believed they were purchasing Sleep Number® or Select Comfort® products from Lateral Monopoly. (Compl. ¶¶ 23-24.) Accordingly, Select Comfort has also established its federal false advertising claim.

*Third Cause of Action (Federal Trademark Dilution) and Eighth Cause of Action (California Trademark Dilution)*

To establish a trademark dilution claim under 15 U.S.C. § 1125(c), a plaintiff must show that: "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 873-74 (9th Cir. 1999). In its complaint, Select Comfort adequately alleges that its trademarks are famous and have achieved incontestable status, (Compl. ¶¶ 11-17); Lateral Monopoly makes unauthorized commercial use of Select Comfort's trademarks when it misrepresents that it sells Sleep Number® beds and uses Select Comfort's pricing and sales literature, (Compl. ¶¶ 23, 25); the unauthorized use began after Select Comfort's trademarks became famous (Compl. ¶¶ 8, 17, 28); and that Lateral Monopoly's use of the trademarks is likely to cause consumer confusion due to the highly related nature of the products and thereby dilutes the distinctive value of the trademarks. (Compl. ¶¶ 29, 30, 35.) Therefore, Select Comfort has adequately pled a federal trademark dilution claim.

Furthermore, the same elements and analysis are used to evaluate a trademark dilution claim under California law. Jada Toys, Inc., 518 F.3d at 634. As such, Select Comfort has also established its California trademark dilution claim.

*Sixth Cause of Action (California False Advertising)*

To prevail on a false advertising claim under Cal. Bus. & Prof. Code § 17500 *et seq.*, a plaintiff must prove that the defendant "made a 'statement,' in connection with the sale of

personal property, 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" PepsiCo, Inc., 238 F. Supp. 2d at 1176 (citing Cal. Bus. & Prof. Code § 17500). As discussed above, Lateral Monopoly is alleged to have made numerous misrepresentations regarding the origin of its goods and its affiliation with Select Comfort in marketing and selling its goods. Accordingly, Select Comfort has properly stated a California false advertising claim.

*Ninth Cause of Action (Unjust Enrichment)*

To state a claim for unjust enrichment, a plaintiff must show that the defendant received a benefit, which it unjustly retained at the expense of the plaintiff. Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000). Select Comfort has alleged that through Lateral Monopoly's unauthorized use of its trademarks, Lateral Monopoly has received the benefit and goodwill of those trademarks, which has been built up at great labor and expense over many years. (Compl. ¶ 33.) Lateral Monopoly has diverted sales from Select Comfort and, as such, has been unjustly enriched. (Compl. ¶¶ 50-55, 109-10.) Accordingly, Select Comfort has established its claim for unjust enrichment.

Therefore, because the allegations in the complaint are sufficient to state the above-mentioned claims, the second and third Eitel factors favor the entry of default judgment.

Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176. In its motion for default judgment, Select Comfort is not seeking monetary damages, but only injunctive relief along with costs and attorneys' fees. Accordingly, this factor favors granting default judgment.

Factor Five: The Possibility of a Dispute Concerning Material Facts

The fifth factor under Eitel "considers the possibility of dispute as to any material facts in the case." PepsiCo, Inc., 238 F. Supp. 2d at 1177. "The general rule of law is that upon

default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Televideo Systems, Inc., 826 F.2d at 917-18. Moreover, Select Comfort has provided the court with well-pleaded allegations supporting its claims. Accordingly, no genuine dispute of material facts would preclude granting the motion.

<u>Factor Six: Whether the Default Was Due to Excusable Neglect</u>

Upon review of the record, the court finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Lateral Monopoly was properly served with process and was also later served with the request for entry of default and the instant motion, to which it failed to respond. Despite ample notice of this lawsuit, Lateral Monopoly has not appeared to date. Thus, the record suggests that Lateral Monopoly has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

<u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177. Lateral Monopoly's failure to answer the complaint precludes a decision on the merits. Although the undersigned is cognizant of the policy in favor of decisions on the merits, and consistent with existing policy would prefer that this case be resolved on the merits, that policy does not, by itself, preclude entry of default judgment. Id.

Upon consideration of the Eitel factors, the court finds that Select Comfort is entitled to the entry of default judgment against Lateral Monopoly and will make a recommendation to that effect. What remains is the determination of the injunctive relief, costs, and attorneys' fees to which Select Comfort is entitled.

\\\

### B. Terms of the Judgment to be Entered

In its motion for default judgment, Select Comfort requests injunctive relief against Lateral Monopoly, costs, and attorneys' fees. The relief sought was requested in the complaint. (Compl. at pp. 16-18.)[4]

### Injunctive Relief

"Under the Lanham Act, injunctive relief may be granted upon reasonable terms according to principles of equity to remedy past and future violations of a plaintiff's trademark rights." Levi Strauss & Co., 665 F. Supp. 2d at 1098 (citing 15 U.S.C. § 1116(a)); see also Century 21 Real Estate Corp., 846 F.2d at 1180 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement."). Under 15 U.S.C. § 1116(a), "[a]ny such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendants of such injunction...a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction."

Here, Select Comfort has demonstrated that Lateral Monopoly's infringement has caused and continues to cause irreparable harm for which monetary damages are inadequate. Select Comfort has also asserted that, unless enjoined by the court, Lateral Monopoly will continue to infringe on Select Comfort's trademarks, and cause public confusion and serious irreparable injury to Select Comfort and its trademarks. (Compl. ¶¶ 53-55.) Accordingly, the court finds that Select Comfort is entitled to entry of a permanent injunction along the terms proposed by Select Comfort, with two exceptions.

First, Select Comfort requests that Lateral Monopoly be enjoined from claiming that Comfortaire, a Select Comfort competitor, is the "original" airbed company. In support of

---

[4] The complaint also seeks monetary damages and profits (Compl. at p. 18), but upon default, Select Comfort is only seeking injunctive relief, costs, and attorneys' fees.

this request, Select Comfort states that "[b]ased on its corporate knowledge of the adjustable firmness airbed industry," this claim is false. (Compl. ¶ 40.) The court has no basis to determine who, if not Comfortaire, was the original airbed company. Select Comfort does not assert that *it* is the "original" airbed company, and as such, the court also cannot determine whether Select Comfort even has standing to seek such relief. Moreover, because this request is unrelated to Lateral Monopoly's unauthorized use of Select Comfort's trademarks, it will be denied.

Second, Select Comfort requests that Lateral Monopoly be enjoined from "claiming to be 'independently rated' as the number one mattress manufacturer, the best bed, or similar claims related to any supposed independent consumer ratings." These statements are apparently based on ratings provided by the website sleeplikethedead.com. Select Comfort essentially contends that the website uses unscientific and unreliable methods to compile their ratings. However, even if this were true, that does not necessarily make the above statements false or deceptive. According to Select Comfort, Lateral Monopoly expressly cites this website in support of its claim, and Select Comfort does not contend that the website has not in fact issued such a rating. The court cannot on this record determine the statistical soundness of the website's ratings, nor is it appropriate to do so. In any event, many of these statements, such as being the "best bed," amount to mere puffery. Again, because this request is unrelated to the unauthorized use of Select Comfort's trademarks, it will be denied.

### Costs

15 U.S.C. § 1117(a) allows a prevailing plaintiff in a trademark infringement action to recover its costs of the action. Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 502-03 (C.D. Cal. 2003). Here, Select Comfort seeks reimbursement of costs in the amount of $230.45, an amount comprised of a fee for two certificates of good standing ($50), pro hac vice fees ($180), and copies ($0.45). (Hansen Decl. ¶¶ 12, 30, Ex. C.) Select Comfort has provided billing statements for these costs, which the court finds reasonable. See Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1069 (N.D. Cal. 2010) (awarding pro hac vice

costs). Accordingly, the undersigned recommends that Select Comfort be awarded its costs in the amount of $230.45.

### Attorneys' Fees

Section 1117(a) gives the court discretion to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). Generally, the term "exceptional cases" is accepted to mean cases in which the trademark infringement is deliberate and willful. See Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993). "Additionally, a case may be deemed 'exceptional,' and merit an award of attorneys' fees under the Lanham Act, when Defendant disregards the proceedings and does not appear." Philip Morris USA, Inc., 219 F.R.D. at 502. Here, Select Comfort alleges that Lateral Monopoly's conduct was willful and intentional. (Compl. ¶ 53.) Moreover, Lateral Monopoly has failed to appear despite having received adequate notice of this lawsuit, thereby disregarding the instant action. Therefore, the court finds that an award of attorneys' fees is appropriate.

Select Comfort requests an award of $23,974.00 calculated under the lodestar method. See Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."). The district court then evaluates whether it is necessary to adjust the "presumptively reasonable" lodestar figure on the basis of the following factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Id. at 363-64 n.8 (citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

According to the Declaration of Andrew S. Hansen, four attorneys at the law firm of Oppenheimer Wolff & Donnelly, LLP billed time to this matter: (a) Mr. Hansen, a partner who has been practicing law for approximately 13 years, has formerly represented Select Comfort in class action defense and other trademark matters with highly favorable results, and who bills at an hourly rate of $390.00; (b) Adam C. Trampe, a sixth year associate who bills at an hourly rate of $310.00; (c) Sam Hellfeld, a sixth year associate who replaced Mr. Trampe on this matter and bills at an hourly rate of $310.00; and (d) Cynthia Wingert, a third year associate who bills at an hourly rate of $250.00. (Hansen Decl. ¶¶ 12-29, Ex. C.) The court finds these hourly rates to be reasonable in light of the respective attorneys' experience and skill.

Furthermore, the court has reviewed the billing records submitted as an exhibit to Mr. Hansen's declaration, and finds the time spent by Mr. Hansen (16.5 hours), Mr. Trampe (10.5 hours) and Mr. Hellfeld (1.4 hours) on the matter to be reasonable. However, the court finds the 55.4 hours spent by Ms. Wingert primarily on researching and drafting the motion for default judgment to be somewhat excessive, especially given that many of the billing entries appear duplicative and lack the specificity required to justify the amount of time spent. Thus, the number of hours billed by Ms. Wingert should be reduced by 1/3 from 55.4 hours to 36.9 hours (or a deduction of $4,625), resulting in a total award of $19,349 in attorneys' fees. Additionally, none of the Kerr factors appears to require adjustment of the lodestar figure (e.g. no contingent fee, unusual time limitations, specific undesirability of the case, etc.) Accordingly, the undersigned recommends that Select Comfort be awarded attorneys' fees in the amount of $19,349.

CONCLUSION

For the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1. Select Comfort's motion for default judgment (dkt. no. 21) be granted in part and denied in part.

\\\\

2. A permanent injunction be issued enjoining and restraining Lateral Monopoly and its agents, employees, officers, servants, representatives, successors and assigns and others in active concert or in participation with Lateral Monopoly:

    a. from the use, in any manner whatsoever, and/or the registration or attempted registration of "Sleep Number" or "Select Comfort," or combinations or variations thereof such as "number bed" and "comfort number," including phonetic equivalents, in or as any name, mark, or domain name;

    b. from using any of the false and/or misleading advertising statements described above, including:

        i. claiming to sell Sleep Number® or Select Comfort® beds; and

        ii. using Select Comfort sales literature;

    c. from diluting the distinctive quality of Select Comfort's Sleep Number® and Select Comfort® trademarks or otherwise injuring or interfering with Select Comfort's business, business reputation, or goodwill;

    d. from engaging in unfair competitive practices or acts that are likely to cause confusion between Select Comfort and Lateral Monopoly and/or their respective products and services;

and requiring Lateral Monopoly to:

    e. deliver up for destruction, or otherwise destroy, all of Lateral Monopoly's advertising and promotional materials containing any use of the Sleep Number® or Select Comfort® trademarks or any false or misleading statements; and

    f. file with the court, and serve on Select Comfort within thirty (30) days following issuance of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Lateral Monopoly has

complied with the injunction;

3. Select Comfort be awarded costs in the amount of $230.45;

4. Select Comfort be awarded attorneys' fees in the amount of $19,349; and

5. The case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 16, 2011

   /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/wvr
SelectComfort.1488.default.judgment.fr.wpd